## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Wendkouni Wilfried Arnold Zongo, | Civ. No. 21-407 (NEB/BRT) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Joel Brott, Sherburne County, Leonard Todd, John Doe, MEnD Correctional Care PLLC,[1] | |
| Defendants. | |

Wendkouni Wilfried Arnold Zongo, *pro se* Plaintiff.

Aaron M. Bostrom, Esq., Stephanie A. Angolkar, Esq., United States Attorney's Office, counsel for Defendants Sherburne County and Joel Brott.

BECKY R. THORSON, United States Magistrate Judge.

This case arises from *pro se* Plaintiff Wendkouni Wilfried Arnold Zongo's detention at Sherburne County Jail ("the Jail") where he was housed as a detainee by Immigration and Customs Enforcement ("ICE") until his recent release on an order of supervision. (Doc. No. 44.) Since Plaintiff first filed this matter on February 11, 2021, his claims have gone through several changes. What began as a petition for a writ of habeas corpus has since been converted to a civil action. The operative pleading now before this

---

[1]   Defendants Sherburne County, Leonard Todd, John Doe, and MEnD Correctional Care PLLC were all added as party defendants through Plaintiff's Second Amended Complaint, the now operative complaint.

Court is Plaintiff's Second Amended Complaint. (Doc. No. 47, ("2d Am. Compl.").)[2] In his Second Amended Complaint, Plaintiff alleges claims of wrongful imprisonment, unconstitutional conditions of confinement, and deliberate indifference under 42 U.S.C. § 1983, all stemming from his detention at the Jail. He also raises a disability discrimination claim under Section 504 of the Rehabilitation Act and state tort claims for false imprisonment and intentional infliction of emotional distress. Plaintiff's Second Amended Complaint names several defendants: Sherburne County; Joel Brott in his "official capacity as the Sheriff of [] Sherburne County"; Dr. Todd Leonard in his "official capacity as CEO of MEnD Correctional Care PLLC"; and "John Doe" "in his/her official and individual capacities as medical doctor in charge of inmate medical care" at the Jail. (*Id.* ¶¶ 17–20.)

Defendants moved to dismiss Plaintiff's Second Amended Complaint on October 1, 2021. (Doc. No. 29.) Plaintiff opposed Defendants' motion. (Doc. No. 41, Mem. of Law in Oppo. to Defs. Sherburne Cty. and Joel Brott's Mot. to Dismiss ("Pl. Mem.").) Plaintiff also moved on November 8, 2021, to amend his Second Amended Complaint and file a proposed Third Amended Complaint, which Defendants oppose. (Doc. Nos. 40, 42.) For the reasons below, this Court recommends that Defendants' motion to dismiss (Doc. No. 29) be granted, Plaintiff's November 8, 2021 motion to amend (Doc. No. 40) be denied, and Plaintiff's action be dismissed.

---

[2] The Court recently granted Plaintiff's August 25, 2021 motion to amend his pleading. (Doc. No. 46.)

## I.     BACKGROUND

On September 2, 2020, ICE agents arrested Plaintiff pursuant to 8 U.S.C. § 1226(a) and remanded him to immigration custody at the Jail. (2d Am. Compl. ¶¶ 21–22, 35.) While there, Plaintiff suffered various health issues, including back pain, lactose intolerance, cavities, and acute pancreatitis. Plaintiff claims that, despite informing the Jail staff of these issues, the Jail staff improperly treated him: they only provided him with extra blankets when he complained of back pain (*id.* ¶ 66); they did not provide a lactose-free milk option for his cereal at breakfast (*id.* ¶ 53); and they did not provide him permanent fillings for his cavities but gave him temporary fillings and the pain medications Dentek and Ibuprofen. (*Id.* ¶¶ 54–55.)

In addition, Plaintiff alleges the Jail staff failed to meet his treatment needs for his acute pancreatitis. According to Plaintiff, the Jail staff "routinely" fed him meager portions of "plain rice or plain pasta or plain potatoes; boiled and unseasoned meat substitute," all of which he could not eat due to his pancreatic dietary restrictions, forcing him to purchase his own food. (*Id.* ¶¶ 50–52.) They also refused to dispense his usual pain medication of Oxycontin but provided him with Ibuprofen and Tylenol to treat his pancreatitis pain for three months until a gastrointestinal doctor prescribed the substitute pain medication Gabapentin, which Plaintiff alleges was less effective than Oxycontin. (*Id.* ¶¶ 56, 59–60.) Plaintiff also alleges the Jail staff failed to properly administer his pancreatic medication Creon: they did not give him Creon for the first week of his detention (*id.* ¶ 57); at the advice of a gastrointestinal doctor, they reduced his Creon prescription for nine months before raising it to the level prescribed before he arrived at

the Jail (*id.* ¶¶ 57–61); and they failed to administer his Creon on an appropriate schedule for the first three months of his detention, dispensing it during medication pass time instead of before every meal. (*Id.* ¶ 58.) Finally, Plaintiff alleges the Jail staff did not take him to the hospital or provide him with a nurse when he suffered two pancreatitis attacks but offered him Tylenol or Maalox. (*Id.* ¶ 63.) And they did not allow him to see a "medical provider." (*Id.* ¶ 64.) All this, he alleges, caused him great pain and suffering.

Along with his health issues, Plaintiff also alleges various complaints about his conditions of confinement at the Jail: he was not allowed to get any exercise or fresh air; his quarters were tiny; he spent fifteen weeks in "solitary confinement" due to staffing shortages and COVID-19; he had limited contact with family members who reside abroad; he was denied access to some correspondence from external parties; he was prevented from working with lawyers due to COVID-19 lockdowns; he had trouble using the phone because it was expensive and did not work reliably for international calls; he was not allowed video calls or text messaging; he had to finance his own amenities (a sweatshirt, a radio, and batteries); he was moved to a "tiny bubble" at one point with ten other ICE detainees without access to hot water and with limited computer access; some of his correspondence was designated contraband and returned to the sender; and he was subject to shakedowns in handcuffs or at gunpoint. (*Id.* ¶¶ 67–80.)

Based on these alleged facts, Plaintiff asserts ten distinct counts in his Second Amended Complaint, which are quoted below:

> Count 1: Violation of the right to be free from unreasonable seizure under the Fourth Amendment of the U.S. Constitution through wrongful detention (Against Sheriff Joel Brott);

Count 2: False imprisonment (Against Sheriff Joel Brott);

Count 3: Violation of the due process under the Fourteenth Amendment of the U.S. Constitution through detention without due process and judicial review for so far 11 months (Against Sheriff Joel Brott);

Count 4: Violation of the due process under the Fourteenth Amendment of the U.S. Constitution through detention in conditions tantamount to punishment (Against Sherburne County);

Count 5: Violation of the due process under the Fourteenth Amendment of the U.S. Constitution through the unrelated nature of Mr. Plaintiff's commitment to the purpose for which he was committed (Against Sherburne County, Joel Brott);

Count 6: Violation of the due process under the Fourteenth Amendment of the US Constitution through deliberate indifference to medical and dietary needs (Against Joel Brott, Todd Leonard, John Doe);

Count 7: Violation of the due process under the Fourteenth Amendment of the US Constitution through abuse of power (Against Joel Brott);

Count 8: Violation of the equal protection under the Fourteenth Amendment of the US Constitution through detention without judicial review (Against Joel Brott);

Count 9: Intentional infliction of emotional distress (Against Joel Brott, Todd Leonard, John Doe);

Count 10: Violation of Section 504 of the Rehab Act (Joel Brott).

(*Id.* ¶¶ 81–144.) Plaintiff now seeks multiple forms of relief, including monetary

compensation. (*Id.* ¶ 145.)

## II.    MOTION TO DISMISS

Defendants move to dismiss Plaintiff's Second Amended Complaint. (Doc. No. 29.) They argue that Plaintiff's claims are based on several incorrect premises and insufficiently pled. (*See generally* Doc. No. 32, Mem. of Law in Supp. of Defs.' Sherburne Cty. Jail and Sheriff Joel Brott's Motion to Dismiss ("Defs.' Mem.").)

### A.  Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court accepts as true all factual allegations, however, the Court need no accept as true conclusory allegations or legal conclusions "couched as factual allegations." *Hager v. Arkansas Dep't. of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013).

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "The plausibility standard is not akin to a 'probability requirement,' but it

6

asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, 'it stops short of the line between possibility and plausibility'" and must be dismissed. *Id.* (quoting *Twombly*, 550 U.S. at 556–57).

## B. Prison Litigation Reform Act

Defendants first argue that Plaintiff cannot recover damages because he has failed to allege a sufficient physical injury under the Prison Litigation Reform Act ("PLRA"), codified at 42 U.S.C. § 1997e. (Defs.' Mem. 6–7.) The PLRA, however, does not apply to immigration detainees. *See* 42 U.S.C. § 1997e(h) ("[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law . . ."); *see also Perkins v. Hedricks*, 340 F.3d 582, 583 (8th Cir. 2003) (not applying the PLRA to civil detainee); *Doe By & Through Doe v. Washington Cty.*, 150 F.3d 920, 924 (8th Cir. 1998) ("The PLRA unambiguously applies to only those suits filed by prisoners. Doe was not a prisoner, and the PLRA therefore does not apply to his case."). Therefore, contrary to Defendants' argument, the PLRA does not apply here.

## C. Plaintiff's Claims Under 42 U.S.C. § 1983

Plaintiff brings claims under 42 U.S.C. § 1983 regarding wrongful imprisonment, unconstitutional conditions of confinement, and deliberate indifference. Some of these claims name Sherburne County, a municipality, as a Defendant. Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure

to train or supervise. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). Most of Plaintiff's § 1983 claims are asserted against Sheriff Joel Bott in his official capacity. A claim against a government employee in his official capacity is a suit against the entity that employs him. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, a suit against Sheriff Brott in his official capacity is one against Sherburne County.[3] *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 n. 55 (1978). ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.").

On top of his claims against Sherburne County, Plaintiff also alleges deliberate indifference claims against CEO Dr. Todd Leonard in his official capacity and the doctor "John Doe" in his/her official and individual capacity. Dr. Leonard is the CEO of MEnD Correctional Care PLLC and "John Doe" is an alleged "Doctor working for MEnD" at the Jail. (2d Am. Compl. ¶¶ 19–20.) MEnD Correctional Care PLLC operates as a healthcare provider contracted by the Jail. (*Id.*) A medical contractor for a jail may also be held liable under § 1983. *See Burke v. North Dakota Dep't of Corr. & Rehab.*, 294 F.3d 1043, 1044 (8th Cir. 2002). However, a person cannot maintain a *respondeat*

---

[3]     Defendants argue that Plaintiff also makes allegations against "Sherburne County Jail" and that therefore some of his claims should be dismissed because the Jail, as a building, is not a legal entity subject to suit under § 1983. (Defs.' Mem. 8.) But Plaintiff's Second Amended Complaint specifically states that he is suing Sherburne County "because it owns and operates the Sherburne County Jail." (2d Am. Compl. ¶ 17.) There is no mention of Sherburne County Jail as a separate named Defendant in the Second Amended Complaint's listed parties. (*See id.* ¶¶ 16–20.) Therefore, this Court is not persuaded by Defendants' argument that some of Plaintiff's claims should be dismissed because he has made allegations against Sherburne County Jail.

*superior* theory of liability against a corporation based upon the allegedly wrongful actions of its employees. *See id.*; *see also Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993). Thus, Dr. Leonard and "John Doe" in their official capacities, i.e., MEnD Correctional Care PLLC, may only be held liable under § 1983 if MEnD Correctional Care PLLC had a "policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006).

### 1.  Plaintiff's Wrongful Imprisonment Claims (Counts One, Three, Seven, and Eight)

Plaintiff alleges in Counts One, Three, Seven, and Eight that Sherburne County Sheriff Brott in his official capacity (i.e., Sherburne County) wrongfully imprisoned him and therefore violated his Fourth Amendment rights and Fourteenth Amendment Due Process and Equal Protection rights. Specifically, Plaintiff alleges that Sherburne County has a policy of accepting and housing ICE detainees without judicial review such that Sherburne County committed the following:

- *Count 1*: wrongfully imprisoned Plaintiff without probable cause and housed him for more than six months with no judicial review of his detention;

- *Count 3*: did not allow judicial review of Plaintiff's detention for 11 months;

- *Count 7*: abused executive power by submitting Plaintiff to punishment through confinement without any legal basis and kept him imprisoned without any due process of law; and

- *Count 8*: violated Plaintiff's equal protection rights by detaining him without affording him due process of law.

(2d Am. Compl. ¶¶ 81–132.) Defendants argue these counts should be dismissed because Plaintiff has named the wrong defendant. They argue that because ICE arrested and seized Plaintiff, Plaintiff's claims of wrongful arrest and detention should be directed at ICE, the only possible defendant for these claims. (Defs.' Mem. 9–10.) Plaintiff does not dispute that ICE arrested him. Instead, he argues that Sherburne County is liable because, by housing Plaintiff, Sherburne County detained him and thus had a duty to provide him due process and assure he was seized with probable cause. (Pl. Mem. 5–12.)

The Fourth Amendment and Fourteenth Amendment's Due Process Clause restrict how the government may detain a person. "The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause." *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 918 (2017). Similarly, under circumstances here where an alien is detained under 8 U.S.C. § 1226(c), the Due Process Clause "restricts how long the government may detain an alien under § 1226(c)." *Muse v. Sessions*, 409 F. Supp. 3d 707, 713 (D. Minn. 2018). Ultimately, it is the Attorney General, and thus ICE, who has the authority to "arrest and detain an alien." *Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018).

Plaintiff presents his wrongful imprisonment claims as a § 1983 action against Sherburne County. But he challenges the fact and duration of his detention. Magistrate Judge Bowbeer addressed this issue in her May 26, 2021 Order: "To the extent [Plaintiff] is challenging the fact or duration of his immigration-related detention, his claims sound in habeas." (Doc. No. 22 at 4) (citing *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900 (D.

10

Minn. 2020); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).)[4] Habeas claims cannot be combined with civil rights claims in a single action. *See Spencer v. Haynes*, 774 F.3d 467, 469–71 (8th Cir. 2014); *Canada v. Olmsted Cty. Cmty. of Corr.*, No. 21-CV-2120 (NEB/DTS), 2022 WL 607482, at *8 (D. Minn. Mar. 1, 2022); (Doc. No. 22 at 4.) Moreover, a habeas claim is an attack "by a person in custody upon the legality of that custody," and thus is properly directed at the detaining authority who has placed him in custody, which here is ICE. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 859–60 (D. Minn. 2019) (analyzing the habeas petition of petitioner who "has been in ICE custody" while "ICE is housing him at the Sherburne County Jail—a facility that houses . . . federal detainees" along with "inmates who are serving state prison sentences").

Because Sherburne County did not seize or detain Plaintiff, Plaintiff fails to state a constitutional violation under the Fourth Amendment or the Fourteenth Amendment's Due Process Clause against Sherburne County. Similarly, Plaintiff fails to state an Equal Protection claim under Count Seven, as that claim hinges on whether Sherburne County should have afforded him Due Process before he was detained. Accordingly, this Court recommends the dismissal of Counts One, Three, Seven, and Eight from Plaintiff's Second Amended Complaint.

---

[4]   In denying Plaintiff's earlier motion to amend, Magistrate Judge Bowbeer noted that Plaintiff's "proposed amended complaint contests the validity of Zongo's arrest by ICE, his subsequent detention pursuant to an ICE detainer." (Doc. No. 22 at 4.)

### 2. Plaintiff's Conditions-of-Confinement Claims (Counts Four and Five)

Plaintiff alleges condition-of-confinement claims in Counts Four and Five of his Second Amended Complaint. Count Four is directed only at Sherburne County. Count Five is directed at Sherburne County and Sheriff Brott in his official capacity (i.e., Sherburne County). Therefore, together these claims are directed at Sherburne County. To support his claims, Plaintiff alleges that Sherburne County has a policy of violating immigration detainees' due process rights by housing immigration detainees in pecuniary conditions that include prolonged lockdowns under COVID-19, which prevented Plaintiff from contacting his counsel. (2d Am. Compl. ¶¶ 102–16.) Defendants argue that Plaintiff fails to state a claim because immigration detainees are like pretrial detainees under the law, and the conditions at the Jail are not unconstitutional. (Defs.' Mem. 10–11.)

As an immigration detainee, Plaintiff's status is like the status of pretrial detainees. *See Ukofia v. Dep't of Homeland Sec.*, No. 09-CV-0017 (PJS/JJG), 2010 WL 597059, at *6 (D. Minn. Feb. 17, 2010) (citations omitted) ("The status of an immigration detainee is similar to the status of a pretrial detainee."). Pretrial detainees "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (citations omitted); *see also Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982) (finding that individuals who have been civilly detained or committed "are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish"). That said, "not every

disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996) (citation omitted).

The Eighth Circuit in *Stearns v. Inmate Services Corporation* outlined "two ways to determine whether conditions rise to the level of punishment." 957 F.3d 902, 907 (8th Cir. 2020). Either a "plaintiff could show that the conditions were intentionally punitive," or, if there was no express demonstration of an intent to punish, "the plaintiff could also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose."[5] *Id.* Under the second way, "the fighting question is whether [the county's] policies or customs that caused the conditions of [plaintiff's] confinement were reasonably related to a legitimate goal or were excessive as compared to that goal." *Id.* at 908. "If found to be arbitrary or excessive, it is permissible to 'infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.'" *Id.* at 908–09 (quoting *Bell*, 441 U.S. at 539).

Plaintiff has pled no facts showing how Sherburne County's policy of housing immigration detainees at the Jail expressed an intent to punish. Nor has he pled sufficient facts to show his confinement under that policy was not reasonably related to a legitimate goal or, if it was so related, whether his confinement is excessive as compared to that

---

[5]     Defendants argue the appropriate standard here is deliberate indifference. (Defs.' Mem. 10–11.) However, that standard is only applied where a "pretrial detainee claims that prison officials unconstitutionally ignored a serious medical need or failed to protect the detainee from a serious risk of harm," which is not the case for this claim where Plaintiff has alleged his conditions of confinement rise to the level of punishment. *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006).

legitimate goal. *Id.* at 908. At most, Plaintiff alleges that he is being housed in a

correctional facility where he has difficulties communicating with family, getting

exercise, living in a limited space with other detainees, and having to purchase his own

radio and batteries. But these facts about his confinement simply show that Plaintiff is

confined; they do not show his confinement is excessive or not related to a legitimate

goal. Plaintiff contends that, when compared to other facilities, the Jail is punitive by

"nature" because it keeps detainees like Plaintiff in correctional-like conditions. (2d Am.

Compl. ¶¶ 104, 107.) However, the mere fact that immigration detainees are housed at

the Jail, which establishes certain conditions of confinement to ensure security and order,

does not inherently mean that the conditions for immigration detainees are punitive. *See

Bell*, 441 U.S. at 561 ("Ensuring security and order at the institution is a permissible

nonpunitive objective, whether the facility houses pretrial detainees, convicted inmates,

or both.").

Similarly, Plaintiff provides insufficient facts to support his allegations that the

Jail's COVID-19 policies prevented him from seeing counsel during the time he was

under lockdown. *See Ware v. St. Louis City Just. Ctr.*, No. 4:20-CV-01065 (AGF), 2020

WL 7240445, at *7 (E.D. Mo. Dec. 9, 2020) ("As to his claims that he is being denied

attorney visits . . . plaintiff again presents no facts to buttress his contentions."). And the

few facts he asserts about his inability to meet counsel during COVID-19 lockdowns do

not suggest how this alleged policy restriction was inappropriate. *Id.* ("Furthermore, as

plaintiff himself acknowledges, the alleged curtailing of these rights has come about

because plaintiff was isolated in the infirmary with COVID-19-like symptoms. Nothing

14

in the amended complaint suggests that there was anything inappropriate in restricting plaintiff's ability to do certain things while in quarantine.").

Therefore, because Plaintiff fails to allege sufficient facts supporting his condition-of-confinement claims, this Court recommends the dismissal of Counts Four and Five.

### 3.   Plaintiff's Deliberate Indifference Claims (Count Six)

In Count Six, Plaintiff alleges a deliberate indifference claim under the Fourteenth Amendment regarding his acute pancreatitis, cavities, susceptibility to COVID-19, and back pain. (2d Am. Compl. ¶¶ 117–25.) Plaintiff's deliberate indifference claims regarding his healthcare and dietary needs are directed at MEnD Correctional Care PLLC staff (i.e., CEO Dr. Todd Leonard (official capacity), and doctor "John Doe" (official and individual capacities)). (Pl. Mem. 16.) His other deliberate indifference claims regarding COVID-19 are directed at Sheriff Brott in his official capacity, which is a claim against Sherburne County. (*Id.*)

Plaintiff's Due Process Clause claim under the Fourteenth Amendment is assessed under the deliberate indifference standard. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). The deliberate indifference standard has two components. First, the detainee must allege that he had an objectively severe medical need. *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014). "To be objectively serious, a medical need must have been diagnosed by a physician as requiring treatment or must be so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.* at 1065. Second, the detainee must show that prison officials knew of, but deliberately

disregarded, his serious medical need. *Id.* Plaintiff must show "more than negligence, more even than gross negligence to evince deliberate indifference." *Id.* (quotations omitted). "Merely demonstrating that a prison doctor committed medical malpractice is insufficient to establish deliberate indifference." *Id.* (quotations omitted). A detainee "must demonstrate that a prison doctor's actions were so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Id.* at 1066 (quotations omitted) (citing *Dulany v. Carnahan*, 132 F.3d 1234, 1240–41 (8th Cir. 1997)). This is an "extremely high standard that requires a mental state" more "akin to criminal recklessness." *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016) (quotations omitted).

### i.    Plaintiff's COVID-19 Claim

Plaintiff alleges that Sheriff Brott in his official capacity (i.e., Sherburne County) "knowingly accepted plaintiff for an alleged civil immigration violation into his jail and placed him in the care of correctional officers that were not and are to this date not vaccinated against COVID-19." (2d Am. Compl. ¶ 119.) Plaintiff also alleges that "it is Joel Brott responsibility (sic) to ensure that only detainees whose medical condition can be entertained by [the Jail] medical personnel are admitted." (*Id.* ¶ 120.) Thus, Plaintiff alleges that, by keeping a policy that did not mandate vaccines for all its staff at the Jail, Sherburne County was deliberately indifferent to his medical needs.

But even assuming Plaintiff has pled enough facts to sufficiently establish that he has an objectively severe medical need, Plaintiff has not demonstrated that Sherburne County's vaccination policy demonstrates that his medical needs were deliberately

16

disregarded by Sherburne County. At most, Plaintiff's Second Amended Complaint suggests negligence, which is not enough to meet the high standard of deliberate indifference. *See Stai v. Deshane*, 183 F. Supp. 3d 937, 943 (D. Minn. 2016) ("[D]eliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct.") (quotations omitted). In fact, Plaintiff alleges facts that demonstrate that Sherburne County took steps to protect the Jail's inmates from COVID-19 by limiting the spread through lockdowns. (2d Am. Compl. ¶ 75); *see Jorgensen v. Birkholz*, No. 20-CV-2349 (NEB/DTS), 2021 WL 3476709, at *11–12 (D. Minn. Feb. 18, 2021) (finding the petitioners had not pleaded the requisite elements of a deliberate indifference claim in part because the correctional facility that housed them had taken steps to respond to the risk the petitioners faced from COVID-19), *report and recommendation adopted*, No. 20-CV-2349 (NEB/DTS), 2021 WL 2935641 (D. Minn. July 13, 2021). Plaintiff has also not pled any facts demonstrating the lack of a vaccine mandate for staff creates a risk more severe than that faced outside the Jail. *Jorgensen*, 2021 WL 3476709, at *11 ("Many of the 'grave risk[s]' Petitioners face are no more grave than the risks faced by those outside FPC-Duluth.") (citation omitted) (alteration in original).

Therefore, because Plaintiff has failed to sufficiently plead facts showing a deliberate indifference claim against Sheriff Brott that could be imputed to Sherburne County, this Court recommends dismissal of Plaintiff's deliberate indifference claim against Sheriff Brott.

ii.    **Plaintiff's Claims Against Defendants Dr. Todd Leonard and "John Doe"**

Plaintiff makes claims against Defendants Dr. Todd Leonard and "John Doe" in their official capacity. By naming them in their official capacity, Plaintiff's claims are directed against MEnD Correctional Care PLLC, their employer. *Monell*, 436 U.S. at 691 n. 55 ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). "Typically, *Monell* claims are against governmental entities, such as Sherburne County, but courts have held that medical providers contracting with a jail may also be held liable if a plaintiff identifies a policy or custom that caused the plaintiff's injury." *Brenner v. Asfeld*, No. 18-CV-2383 (NEB/ECW), 2019 WL 2358451, at *8 (D. Minn. June 4, 2019) (citing *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403 (1997)) (quotations omitted). Thus, MEnD Correctional Care PLLC can be held liable under *Monell*. *See*, *e.g.*, *Brenner*, 2019 WL 2358451, n.7 ("Because Plaintiffs add Dr. Leonard to the SAC's *Monell* claim in his official capacity, the claim is against MEnD and not Dr. Leonard individually.").

Plaintiff alleges that Defendants Dr. Leonard and "John Doe" were deliberately indifferent to treating his acute pancreatitis, cavities, and back pain. Specifically, Plaintiff alleges that Defendants Dr. Leonard and "John Doe" were deliberately indifferent to his acute pancreatitis because they did not meet his dietary needs, did not allow for dispensation of Oxycontin, reduced his prescription for Creon, and did not correctly administer Creon before meals. He also specifically alleges his temporary cavity fillings

were ineffective and caused him pain, and that he suffered back pain which was inadequately addressed.

Plaintiff has not sufficiently alleged that his back pain was an objectively severe medical need. As stated above, "[t]o be objectively serious, a medical need must have been diagnosed by a physician as requiring treatment or must be so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Buckman*, 756 F.3d at 1065. Plaintiff alleges no facts that his back pain was diagnosed by a physician as requiring treatment. And apart from his own assertions of pain, Plaintiff has not pled facts showing that his back pain was so obvious that even a layperson would easily recognize the necessity for a doctor's attention. Thus, by not pleading facts showing his back pain was objectively serious, Plaintiff fails to satisfy the first component of a pled deliberate indifference claim related to his back.

As for Plaintiff's complaints about his acute pancreatitis and cavity fillings, even if these complaints could be considered an objectively serious medical need, Plaintiff has not pled facts showing that Defendants Dr. Leonard and "John Doe" deliberately disregarded Plaintiff's medical need. To show deliberate indifference, Plaintiff must show that Defendants knew of, but deliberately disregarded, his serious medical need and that such disregard rose above even gross negligence to "intentional maltreatment or a refusal to provide essential care." *Buckman*, 756 F.3d at 1066. Plaintiff's allegations, however, reveal that medical staff responded to his demands, including supplying him with medications, making sure his medications were adjusted over time, and that he saw a

19

gastrointestinal specialist more than once to resolve his pancreatitis issues.[6] Moreover,

Plaintiff's allegations show that medical staff provided Plaintiff with temporary fillings

and pain medication for his dental pain, refuting his contention that his claim meets the

deliberately indifferent standard. Plaintiff may have a different opinion about the type of

care he received or its delay, but "a difference of opinion between an inmate and prison

medical personnel regarding appropriate medical treatment does not suffice, neither does

a delay in providing medical treatment unless the delay causes substantial harm."

*Bellecourt v. United States*, 784 F. Supp. 623, 634 (D. Minn. 1992) (citation omitted).

Plaintiff has not alleged facts to sufficiently establish substantial harm.

Accordingly, since Plaintiff has not satisfied the pleading standards for his

deliberate indifference claim, this Court recommends the dismissal of Plaintiff's

deliberate indifference claim against Dr. Leonard and "John Doe."[7]

---

[6]      Plaintiff also appears to allege that Defendants Dr. Leonard and "John Doe," despite the "seriousness" of his pancreatitis, were "indifferent to his . . . dietary needs." (2d Am. Compl. ¶ 125.) But he pleads no facts showing how Dr. Leonard and "John Doe" were involved in his diet or what actions they took to be deliberately indifferent. Accordingly, to the extent Plaintiff separately alleges deliberate indifference claims against Dr. Leonard and "John Doe" for his dietary needs, that claim also fails and should be dismissed.

[7]      In addition to his official capacity claims, Plaintiff also makes deliberate indifference claims against "John Doe" in his/her individual capacity to impose personal liability. "Individual capacity claims are prosecuted against the named individual and seek to impose personal liability." *Arashiba v. City of Minneapolis*, No. 20-CV-579 (PAM/DTS), 2021 WL 3276305, at *3 (D. Minn. Jan. 21, 2021), *report and recommendation adopted*, No. 20-CV-579 (PAM/DTS), 2021 WL 754148 (D. Minn. Feb. 26, 2021). Here, the deliberate standard still requires that Plaintiff show he suffered from an objectively serious medical need and that "John Doe" in his/her individual capacity actually knew of but deliberately disregarded that need. *See, e.g.*, *Birdo v. Hutchison*, No. 20-CV-1925 (MJD/ECW), 2021 WL 3743521, at *5 (D. Minn. July 28, 2021*) (applying

### D. Rehabilitation Act Claim (Count Ten)

In Count Ten, Plaintiff alleges that Sheriff Brott in his official capacity violated the Rehabilitation Act by failing to provide him with lactose free milk at breakfast, which the Jail does not carry.[8] As discussed above, since Sheriff Brott was sued in his official capacity, Plaintiff's claim is against Sherburne County.

Under Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998). "To prevail on a claim under Section 504, a plaintiff must demonstrate that: (1) he is a qualified individual with a disability; (2) he was denied the benefits of a program or activity of a public entity which receives federal funds, and (3)

---

deliberate indifference standard against defendant in her individual capacity), *report and recommendation adopted sub nom.*, *Birdo v. Hutchinson*, No. 20-CV-1925 MJD/ECW, 2021 WL 3741484 (D. Minn. Aug. 24, 2021). Because Plaintiff has failed to sufficiently show how his back pain was an objectively severe medical need and failed to plead facts that show how "John Doe" deliberately disregarded Plaintiff's medical and dietary needs, this Court recommends dismissal of his individual capacity claims against "John Doe."

[8]    Plaintiff's Second Amended Complaint includes an allegation that Sheriff Brott violated the Rehabilitation Act by housing him in a situation where he was at risk for COVID-19 as a high-risk individual. However, in his response to Defendant's Motion to Dismiss, Plaintiff concedes that his Rehabilitation Act claim based on COVID-19 is not properly articulated. (Pl. Mem. 19–20 ("Mr. Plaintiff agrees that his claim as it pertains to his predisposition to the COVID-19 is not properly articulated under Section 504 of the Rehabilitation Act and better cognizable under his deliberate indifference claim, Count VI.").) Thus, this Court recommends dismissal of Plaintiff's Rehabilitation Act claim as it pertains to COVID-19.

he was discriminated against based on his disability." *Gorman v. Bartch*, 152 F.3d 907, 911 (8th Cir. 1998).

Defendants argue that Plaintiff fails to state a claim because lactose intolerance is not a disability under Section 504 of the Rehabilitation Act. (Defs.' Mem. 17–19.) Under the Rehabilitation Act, a disability is defined as a "physical or mental impairment that *substantially limits* one or more major life activities . . . ." 42 U.S.C. § 12102(2)(A) (emphasis added). A major life activity is one of "central importance to most people's daily lives." *Fenney v. Dakota, Minnesota & E. R. Co.*, 327 F.3d 707, 714 (8th Cir. 2003). "Whether a major life activity is substantially limited is an individualized and fact-specific inquiry." *Land v. Baptist Med. Ctr.*, 164 F.3d 423, 425 (8th Cir. 1999). "Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working … as well as sitting, standing, lifting, and reaching." *Cooper v. Olin Corp., Winchester Div.*, 246 F.3d 1083, 1088 (8th Cir. 2001).

Plaintiff's Second Amended Complaint fails to show how his lactose intolerance substantially limits a major life activity. He states that because he was not offered a lactose free option, Sherburne County discriminated against him. But he does not allege what major life activity was inhibited. Plaintiff offers additional explanation through his responsive filing to Defendants' Motion to Dismiss.[9] (Pl. Mem. 19.) However, the Court

---

[9]     In his opposition to Defendants' Motion to Dismiss, Plaintiff explains that his "partial breakfast only made of dry cereal" has led him to "spend half of the day with an empty stomach which in turn substantially limited his ability to interact with other inmate, speak, walk, work on his case." (Pl. Mem. 19.) But Plaintiff cannot amend his

ordinarily does not consider matters outside the pleadings on a motion to dismiss, and it

will not do so here. *See* Fed. R. Civ. P. 12(d). "Matters outside the pleadings include any

written or oral evidence in support of or in opposition to the pleading that provides some

substantiation for and does not merely reiterate what is said in the pleadings." *Armstrong*

*v. City of Minneapolis*, 525 F. Supp. 3d 954, 961 (D. Minn. 2021) (quotations omitted).

Plaintiff's Second Amended Complaint also fails to draw a connection between

Sheriff Brott in his official capacity and the lack of lactose-free options at breakfast.

Plaintiff states that because "Joel Brott . . . receives federal funds against plaintiff's

detention," he prevented Plaintiff from "having a serene detention." (2d Am. Compl.

¶ 144.) But he fails to establish any connection or involvement by Sheriff Brott to the

alleged violations of the Rehabilitation Act. "To establish liability in an official-capacity

suit under section 1983, a plaintiff must show either that the official named in the suit

took an action pursuant to an unconstitutional governmental policy or custom, or that he

or she possessed final authority over the subject matter at issue and used that authority in

---

Second Amended Complaint after the fact through his response. *See*, *e.g.*, *Swanson v. Wilford, Geske, & Cook*, No. 19-CV-117 (DWF/LIB), 2019 WL 4575826, at *5 n.6 (D. Minn. Aug. 30, 2019) ("To the extent Plaintiff's memorandum is seeking leave to amend his Complaint, that request is improper."), *report and recommendation adopted*, No. 19-CV-117 (DWF/LIB), 2019 WL 4573252 (D. Minn. Sept. 20, 2019). Even if he could amend his Second Amended Complaint to correct this deficiency, under similar Americans with Disabilities Act ("ADA") claims, courts generally have rejected considering dietary issues even more limiting than an intolerance as constituting a disability. *See*, *e.g.*, *Land*, 164 F.3d at 425 (concluding that a peanut allergy did not render the plaintiff disabled under the ADA); *Hustvet v. Allina Health Sys.*, 283 F. Supp. 3d 734, 740–41 (D. Minn. 2017) (finding on a motion for summary judgment that plaintiff had failed to show how her chemical sensitivities and allergies created a disability).

an unconstitutional manner." *Nix v. Norman*, 879 F.2d 429, 433 (8th Cir. 1989) (citations omitted). Plaintiff has not done either and thus has failed to draw a connection between Sheriff Brott and the Jail's lack of lactose-free options.

Therefore, because Plaintiff has not pled facts sufficient to demonstrate a claim under the Rehabilitation Act, this claim is not properly raised against Sheriff Brott in his official capacity (i.e., Sherburne County). Accordingly, this Court recommends that it be dismissed.

### E. State Tort Claims

In Counts Two and Nine, Plaintiff alleges state claims of false imprisonment against Sheriff Brott and intentional infliction of emotional distress against Sherburne County, Dr. Leonard, and "John Doe." (2d Am. Compl. ¶¶ 90–95, 133–40.) This Court has already recommended dismissal over the claims which the Court had original jurisdiction. Under 28 U.S.C. § 1367(c)(3), district courts may decline to exercise supplemental jurisdiction over state claims such as these if "the district court has dismissed all claims over which it has original jurisdiction." Accordingly, this Court recommends that the Court decline to exercise its supplemental jurisdiction over these remaining state claims.

## III.   MOTION TO AMEND (Doc. No. 40)

On November 8, 2021, Plaintiff moved for leave to file his Third Amended Complaint, entitled his "Fourth Amended Complaint." (Doc. No. 40.) According to Plaintiff, his proposed Third Amended Complaint clarifies and restates some of his claims made in his Second Amended Complaint. (*Id.* at 1.) Specifically, Plaintiff

24

proposes to (1) update the heading of Count Three to reflect detention without due

process for 14 months instead of 11, and (2) add a deliberate indifference claim regarding

his "safety" to Count Six along with this already alleged deliberate indifference claims

regarding his medical and dietary needs. (*Id.*) Plaintiff also adds an additional

supplemental common law claim against Sherburne County for unjust enrichment. (*Id.*)

Defendants oppose. (Doc. No. 42.) They argue Plaintiff's motion to amend would be

futile because the proposed amendments could not survive their motion to dismiss.

A motion for leave to amend a pleading is futile when the amended pleading

would not withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

*See Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010). Here, this Court has already

recommended dismissal of Counts Three and Six. Adding three extra months to Count

Three and adding the word "safety" in the heading of Count Six does not change this

Court's analysis or recommendation of dismissal as to Plaintiff's federal claims. Thus,

Plaintiff's proposed amendments to his federal claims are futile.

Plaintiff also seeks to amend his state claims by adding an unjust enrichment

claim. Because this Court recommends that Plaintiff's motion to amend as to his federal

claims be denied and that they otherwise be dismissed, no federal claims survive. This

Court therefore also recommends that the Court decline to exercise supplemental

jurisdiction over any decision relating to the viability of Plaintiff's proposed amended

state claims.[10]

---

[10]   Though this Court recommends dismissing Plaintiff's state law claims without
prejudice, nothing precludes Plaintiff from raising the state law claims in state court.

In sum, because Plaintiff's proposed federal claims are futile and supplemental jurisdiction over his state claims should be declined, this Court recommends that Plaintiff's motion requesting leave to file a Third Amended Complaint (Doc. No. 40) be denied.

## RECOMMENDATION

For the reasons stated above, and based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.      Defendants' Motion to Dismiss (Doc. No. 29) be **GRANTED**;

2.      Plaintiff's Motion to Amend (Doc. No. 40) be **DENIED**; and

3.      This action be **DISMISSED WITHOUT PREJUDICE**.

Dated: March 30, 2022                    *s/ Becky R. Thorson*
                                         BECKY R. THORSON
                                         United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within **14 days** after being served a copy" of the Report and Recommendation. A party may respond to those objections within **14 days** after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).

---

However, this Court does not comment on the viability of any of the state law claims and whether they would survive a dismissal motion in state court.